# Illinois Official Reports

## Supreme Court

*People v. Mosley*, 2015 IL 115872

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DONTA MOSLEY, Appellee. |
| Docket No. | 115872 |
| Filed<br>Rehearing denied | February 20, 2015<br>June 5, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, the Hon. Michael Brown, Judge, presiding. |
| Judgment | Circuit court judgment affirmed in part and reversed in part.<br>Cause remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, Annette Collins and Noah Montague, Assistant State's Attorneys, of counsel), for the People.<br><br>Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Gilbert C. Lenz, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |

Justices            JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1       At issue in this case is the constitutionality of certain sections of the aggravated unlawful use of a weapon (AUUW) statute (720 ILCS 5/24-1.6 (West 2012)). Defendant was convicted in a bench trial in the circuit court of Cook County, of, *inter alia*, six counts of AUUW. The circuit court entered a written order holding that due to its findings of statutory unconstitutionality, both facially and as applied to defendant, all six AUUW convictions would be vacated and, instead, a conviction of unlawful use of a weapon (UUW) under section 24-1(a)(4) of the Criminal Code of 2012 (720 ILCS 5/24-1(a)(4) (West 2012)) would be entered. In line with the written order, the trial court imposed a Class A misdemeanor sentence for the UUW conviction. See 720 ILCS 5/24-1(b) (West 2012); 730 ILCS 5/5-4.5-55 (West 2012). Pursuant to Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013), the State's appeal from the circuit court's finding of statutory unconstitutionality comes directly to this court.

¶ 2                    PRINCIPAL STATUTE INVOLVED

¶ 3       At the time of proceedings herein, the AUUW statute provided, in pertinent part:

"§ 24-1.6. Aggravated unlawful use of a weapon.

(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm[1]; or

(2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm[2]; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or

---

[1]For purposes of simplicity, hereafter, the language of subsection (a)(1) of the AUUW statute will be summarized as "carrying on his person or in any vehicle, outside the home, a firearm."

[2]Similarly, the language of subsection (a)(2) will be summarized as "carrying or possessing on his person, upon any public way, a firearm."

\*\*\*

(C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card; or

\* \* \*

(I) the person possessing the weapon was under 21 years of age and in possession of a handgun as defined in Section 24-3, unless the person under 21 is engaged in lawful activities under the Wildlife Code or described in subsection 24-2(b)(1), (b)(3), or 24-2(f).

\* \* \*

(d) Sentence.

(1) Aggravated unlawful use of a weapon is a Class 4 felony[3]; \*\*\*

(2) Except as otherwise provided in paragraphs (3) and (4) of this subsection (d), a first offense of aggravated unlawful use of a weapon committed with a firearm by a person 18 years of age or older where the factors listed in both items (A) and (C) of paragraph (3) of subsection (a) are present is a Class 4 felony, for which the person shall be sentenced to a term of imprisonment of not less than one year and not more than 3 years." 720 ILCS 5/24-1.6 (West 2012).

¶ 4                                Background

¶ 5        On March 7, 2012, Chicago police officers received a call about a person with a gun at a local park. Upon arrival at the park, the officers noticed a group of children playing and a group of teenagers standing together in the park. When officers approached defendant, who was then 19 years of age, and the other teenagers, defendant walked away. The officers demanded that defendant stop walking, but instead he continued to exit the park. Officers then pursued defendant, noticing his hand was on his right waist. When officers got closer to defendant, he began to run. While in pursuit, an officer witnessed defendant reach inside his waistband and pull out a .32-caliber revolver, which he dropped to the ground. Officers recovered the weapon and found that it was fully loaded with six live rounds. The pursuing officer testified at trial that when she saw defendant pull the weapon out from his waistband, the weapon was loose and not enclosed in any type of gun case. Officers were able to apprehend defendant and place him under arrest. At the time of defendant's arrest, he had not been issued a valid Firearm Owner Identification (FOID) card.

¶ 6        The State charged defendant in count I with UUW in a public park (720 ILCS 5/24-1(a)(10) (West 2012)) and with six counts of AUUW; count II, carrying on his person or in any vehicle, outside the home, a firearm which is "uncased, loaded and immediately accessible" (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2012)); count III, carrying on his person or in any vehicle, outside the home, a firearm without a valid FOID card (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2012)); count IV, carrying on his person or in any vehicle, outside the home, a firearm which is "a handgun" while under 21 years of age unless "engaged

---

[3]The term of imprisonment for a Class 4 felony "shall be a determinate sentence of not less than one year and not more than 3 years" and, notwithstanding certain exceptions inapplicable here, "the period of probation or conditional discharge shall not exceed 30 months." 730 ILCS 5/5-4.5-45(a), (d) (West 2012).

in lawful activities under the Wildlife Code" (720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2012)); count V, carrying or possessing on his person, upon any public way, a firearm that is "uncased, loaded and immediately accessible" (720 ILCS 5/24-1.6(a)(2), (a)(3)(A) (West 2012)); count VI, carrying or possessing on his person, upon any public way, a firearm without a valid FOID card (720 ILCS 5/24-1.6(a)(2), (a)(3)(C) (West 2012)); and count VII, carrying or possessing on his person, upon any public way, a handgun while under 21 years of age unless "engaged in lawful activities under the Wildlife Code" (720 ILCS 5/24-1.6(a)(2), (a)(3)(I) (West 2012)).

¶ 7        On December 10, 2012, following a bench trial, the court found defendant guilty of all seven counts. The case was continued for posttrial motions and sentencing. On February 6, 2013, the trial court heard defendant's motion for a new trial alleging, *inter alia*, that the State failed to prove him guilty beyond a reasonable doubt as to each of the seven counts. The court granted defendant's posttrial motion as to count I, UUW in a public park, and entered a finding of not guilty on that count. The trial court denied defendant relief as to the remaining six AUUW counts, finding the evidence sufficient for a guilty verdict on counts II through VII. The State asked that defendant be sentenced to "time in the Illinois Department of Corrections," acknowledging that he had no previous felony convictions or juvenile adjudications. The following colloquy then occurred:

> "THE COURT: State, your understanding is that the law requires that [defendant] be sentenced to the penitentiary?
>
> [PROSECUTOR]: Correct.
>
> THE COURT: Because the charges that remain, Count 2 to Count 6, are non-probationable Class 4 felonies?
>
> [PROSECUTOR]: Correct."[4]

Thereafter, the trial judge, *sua sponte*, expressed his concerns as to whether the "non-probationable" Class 4 felony sentence required to be imposed upon defendant under the AUUW statute (720 ILCS 5/24-1.6(d)(2) (West 2012)) was constitutional, questioning whether that sentence amounted to cruel and unusual punishment and whether there were proportionality problems where "[t]he only non-probationable Class 4 felon[ies] in the State of Illinois are the charges against the defendant." The court therefore continued the sentencing hearing to allow the parties to prepare arguments as to these constitutional concerns.

¶ 8        On March 8, 2013, the trial court heard oral arguments by counsel for defendant and the State regarding what the court termed as the "constitutionality of the mandatory sentencing provision for the aggravated unlawful use of weapon charge that the defendant is facing." Thereafter, on March 15, 2013, the court entered its written order, as required by Illinois Supreme Court Rule 18 (eff. Sept. 1, 2006), finding that "the offense established by 720 ILCS 5/24-1.6(a)(1) & (a)(3)(A) & (C), and the punishment prescribed for the offense by 720 ILCS 5/24-1.6(d)(2), are unconstitutional based on the proportionate penalties clause of Article I,

---

[4]The prosecutor erred in responding to the court's question, as only counts II, III, V and VI charged Class 4 offenses which required sentencing under the "non-probationable" section of the AUUW statute. See 720 ILCS 5/24-1.6(d)(2) (West 2012). Both counts IV and VII, the latter of which the court failed to mention, charged offenses requiring Class 4 felony sentencing, which allows for a sentence of probation. See 720 ILCS 5/24-1.6(d)(1) (West 2012); 730 ILCS 5/5-4.5-45(d) (West 2012). This error, as we shall explain, is not relevant to our decision.

- 4 -

section 11 of the Illinois Constitution and the due process clause of Article I, section 2 of the Illinois Constitution." The court further found that "as to these provisions, the aggravated unlawful use of weapons statute is unconstitutional both on its face and as applied to the defendant because it cannot be reasonably construed in a manner that would preserve its validity." At defendant's March 15, 2013, sentencing hearing, the transcript states that the trial court found unconstitutional "720 ILCS 25-41.6a [*sic*]" of the AUUW statute, "as well as the sentencing provision of a2 [*sic*]," and in an "Addendum" order dated March 15, related to bail and sentencing matters, the first line reads: "Court finds 720-5/24-1.6(A) [*sic*] unconstitutional."[5] The trial court held at sentencing that, "[f]or the reasons stated in the [Rule 18] order," it was "going to vacate the convictions on those counts which is [*sic*] counts two through seven." Further, and consistent with its Rule 18 order, the trial court found defendant guilty and entered a conviction on the uncharged offense of UUW set forth in section 24-1(a)(4) of the Criminal Code (720 ILCS 5/24-1(a)(4) (West 2012)). That section states that the UUW statute is violated when, as applicable here, one knowingly "[c]arries or possesses in any vehicle or concealed on or about his person except when on his land *** any *** firearm." 720 ILCS 5/24-1(a)(4) (West 2012). Defendant was sentenced to 180 days in jail and 15 months probation for this Class A misdemeanor. See 720 ILCS 5/24-1(b) (West 2012); 730 ILCS 5/5-4.5-55(a), (d) (West 2012). This direct appeal to our court by the State followed. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013).

¶ 9                                                              ANALYSIS

¶ 10        Initially, we address the discrepancy as to which portions of the AUUW statute the trial court actually found unconstitutional. In the trial court's discussion portion of its Rule 18 order, the court at times refers to the entirety of section 24-1(a) as being unconstitutional, which is in line with our interpretation of the court's statements at sentencing and in the Addendum order. However, in the specific portion of the order entitled "Findings Under Illinois Supreme Court Rule 18," the trial court confined its findings of unconstitutionality to those sections under which defendant was charged and subject to sentencing, and which were the only matters before the court, although it neglected to specifically mention section 24-1.6(a)(2) and subsection (a)(3)(I). In their briefs, and at oral argument, the parties also confine their contentions regarding the propriety of the trial court's judgment to those subsections of the AUUW statute of which defendant was originally convicted, as well as subsection (d)(2) of the statute's sentencing provision. The parties may have proceeded in this manner in recognition of the fact that the trial court had, at times, found unconstitutional the entirety of section 24-1.6(a), which it had no jurisdiction to do. We agree with the parties' actions, as the subsections setting forth offenses of which defendant had *not* been charged or convicted were not justiciable matters before the trial court.

---

[5]Both the statutory sections set forth in the sentencing transcript and in the Addendum order are apparently scriveners' errors. Reviewing the record as a whole, we believe that the trial court was actually referring to section 24-1.6(a) of the AUUW statute and the sentencing provision set forth in subsection (d)(2), and we will proceed accordingly. 720 ILCS 5/24-1.6(a), (d)(2) (West 2012). See *McKay Plating Co. v. Industrial Comm'n*, 91 Ill. 2d 198, 206-07 (1982) (Court agreed with petitioner that discrepancy in date stated in decision of Commission and date as shown by the record was attributable to scrivener's error and correct date should be the latter.).

¶ 11 Article VI, section 9 of the Illinois Constitution grants circuit courts original jurisdiction over all justiciable matters. Ill. Const. 1970, art. VI, § 9; *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 32. "Generally speaking, a 'justiciable matter' is 'a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests.' " *In re Luis R.*, 239 Ill. 2d 295, 301 (2010) (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002)). More importantly, courts do not rule on the constitutionality of a statute where its provisions do not affect the parties (*Klein v. Department of Registration & Education*, 412 Ill. 75, 87-88 (1952)), and decide constitutional questions only to the extent required by the issues in the case. *Grasse v. Dealer's Transport Co.*, 412 Ill. 179, 201 (1952); see also *Illinois Municipal League v. Illinois State Labor Relations Board*, 140 Ill. App. 3d 592, 599 (1986). Here, therefore, the trial court's pronouncement as to the constitutionality of any offense-based subsections of the AUUW statute other than subsections (a)(3)(A), (a)(3)(C), and (a)(3)(I), as applicable under subsections (a)(1) and (a)(2), were advisory opinions, which Illinois courts are not permitted to render. See *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009) ("As a general rule, courts in Illinois do not *** render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided.").

¶ 12 Accordingly, we limit our discussion to those subsections under section 24-1.6(a) of which defendant was convicted, and subsection (d)(2) of the statute's sentencing provision, which was applicable to defendant. See *People v. Aguilar*, 2013 IL 112116, ¶ 22 n.3 ("[O]ur finding of unconstitutionality in this decision is specifically limited to the [statutory section at issue]. We make no finding, express or implied, with respect to the constitutionality or unconstitutionality of any other section or subsection of the AUUW statute."). Further, to the extent that the trial court's orders or statements could be interpreted as finding any other portion of section 24-1.6(a), which is not at issue in this case, as being unconstitutional, such finding is vacated. 720 ILCS 5/24-1.6(a) (West 2012).

¶ 13 As an additional preliminary matter, we now must address defendant's claim that this court does not have jurisdiction to hear this appeal because the trial court's actions prior to sentencing amounted to an unappealable acquittal of each of his six AUUW convictions. In *People v. Quigley*, 183 Ill. 2d 1, 12 (1998), this court held that an acquittal occurs when the trier of fact renders a verdict or finding of not guilty. The *Quigley* court further stated: "An acquittal generally requires some resolution of a defendant's factual guilt or innocence." *Id.* (citing *United States v. Scott*, 437 U.S. 82, 97-99 (1978)); see also *People v. Henry*, 204 Ill. 2d 267, 283-94 (2003) (entry of a directed verdict in favor of the defendant is an acquittal for purposes of double jeopardy when there was *insufficient evidence* to establish, as a matter of law, some or all of the essential elements of the crime). Here, however, no acquittal occurred where, at the conclusion of defendant's bench trial, the trial court found defendant guilty of, *inter alia*, six counts of AUUW (counts II through VII), three of which involved combining statutory section 24-1.6(a)(1) with subsections (a)(3)(A), (a)(3)(C), and (a)(3)(I), while the other three involved combining section 24-1.6(a)(2) with subsections (a)(3)(A), (a)(3)(C), and (a)(3)(I). Additional support for a finding that no acquittal occurred lies in the fact that the court later denied defendant's motion for a new trial challenging the factual sufficiency of those six AUUW convictions, while it granted defendant's posttrial motion as to count I, UUW in a public park, and entered a finding of not guilty on that count. It is therefore uncontroverted

that the court, as trier of fact, convicted defendant of six counts of AUUW after concluding that each element of the offense set forth in those subsections was proven and, posttrial, affirmed the sufficiency of the evidence as to those convictions.

¶ 14    We note that a trial court's act in vacating a defendant's convictions as a remedy for its posttrial finding that those convictions were based upon unconstitutional statutory sections, as occurred here, is quite different from a trier of fact acquitting a defendant of an offense due to an insufficiency of evidence to convict. In *People v. Williams*, 279 Ill. App. 3d 22, 25-26 (1996), the appellate court stated: "The fact that a conviction is later vacated for constitutional reasons is generally not considered to be the functional equivalent of an acquittal, absent some suggestion that the evidence was insufficient to convict." Here, as we have indicated, neither the court's convictions of defendant at trial nor its denial of defendant's posttrial motion suggests any insufficiency in the evidence, and there is no claim by defendant that the court's order finding sections of the AUUW statute unconstitutional are based on any evidentiary concerns. Thus, for purposes of determining jurisdiction in this case, we conclude that where defendant's six AUUW convictions were vacated based solely on constitutional grounds, and where the sufficiency of the evidence as to those convictions is clear, no acquittals occurred. See *id*.

¶ 15    Next, we reject defendant's contention that the trial court's posttrial entry of a conviction on a lesser-included offense, *ipso facto*, constitutes an acquittal of the greater offense. It is true that when the trier of fact enters a conviction for a lesser-included offense before jeopardy expires, an acquittal of the greater offense occurs. See *Green v. United States*, 355 U.S. 184, 190-91 (1957) (for purposes of double jeopardy analysis, a conviction of a lesser-included offense constituted an acquittal of the greater offense because *the finder of fact was given the choice* to convict defendant of the greater offense and chose not to before jeopardy ended); *People v. McCutcheon*, 68 Ill. 2d 101, 106 (1977) ("The finding of guilty on a lesser charge by the trier of fact is presumptively a finding of not guilty on the greater offense since the trier of fact has the opportunity to find the defendant guilty of the greater offense."). However, in this case, the court, sitting as trier of fact, found defendant guilty of all six counts of AUUW with which he was charged, and only vacated those convictions and entered a conviction on a lesser-included offense during posttrial proceedings. Under these circumstances, the question of whether an acquittal has occurred is dependent on whether the posttrial ruling is based on the State's failure of proof as to the greater offense, or on the establishment of a legal conclusion which does not support the greater offense. See *People v. Zeisler*, 125 Ill. 2d 42, 44-45, 48-50 (1988) (holding that a conviction for a greater offense, *later voided as unconstitutional* by the circuit court following a postconviction hearing, does not bar a second trial for a lesser offense under the double jeopardy clause).

¶ 16    Here, the trial court's posttrial ruling vacating defendant's AUUW convictions was based on its legal conclusion that the subsections of the statute under which he was convicted and sentenced could no longer support those convictions. See *People v. Blair*, 2013 IL 114122, ¶ 28 (the effect of finding a statute facially unconstitutional is to render it "void *ab initio*," and thus incapable of being enforced); see also *People v. Gersch*, 135 Ill. 2d 384, 398 (1990) ("this court has expressly held that a defendant cannot be prosecuted under an unconstitutional act"). Therefore, the trial court's decision to enter a conviction on a lesser offense, based on its posttrial legal ruling, was not an acquittal and may be reversed by this court. See *People v. Klepper*, 234 Ill. 2d 337, 358-59 (2009) (reversing the circuit court's erroneous decision, based

- 7 -

on its posttrial finding that the felony disorderly conduct statute was unconstitutional under the proportionate penalties clause, to vacate the defendant's felony conviction and enter a misdemeanor disorderly conduct conviction).[6]

¶ 17 Additionally, as no acquittal of any AUUW charge occurred in this case, defendant's claim that the State's appeal is barred by article VI, section 6 of the Illinois Constitution must also be rejected. See Ill. Const. 1970, art. VI, § 6 ("after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal"). Similarly, we reject defendant's contention that the double jeopardy clauses of the United States and Illinois Constitutions bar this court from hearing this appeal or reinstating defendant's convictions. This court has held that the double jeopardy clause prohibits appellate review of a judgment of acquittal where, if the government's appeal is successful, the defendant will be subject to a second trial for the same offense. *People v. Mink*, 141 Ill. 2d 163, 175 (1990) (citing *United States v. Wilson*, 420 U.S. 332 (1975)). However, in the case before us, we have established that defendant was *not* acquitted of his AUUW convictions and the record shows that the State has *not* requested a second trial. Thus, where neither the bar on appeals from acquittals under the Illinois Constitution nor double jeopardy principles is implicated herein, this court has jurisdiction. See Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); *In re Derrico G.*, 2014 IL 114463, ¶ 1 (exercising jurisdiction pursuant to Rule 603 on the State's appeal from the circuit court's *sua sponte* finding that a statute was unconstitutional).

¶ 18 Because we have rejected defendant's contentions that this court lacks jurisdiction over the State's appeal, we now address its merits. To convict a defendant under the AUUW statute, the State must prove beyond a reasonable doubt either that a defendant was carrying on his person or in any vehicle, outside the home, a firearm (720 ILCS 5/24-1.6(a)(1) (West 2012)), or was carrying or possessing on his person, upon any public way, a firearm (720 ILCS 5/24-1.6(a)(2) (West 2012)) and that one of the factors set forth in subsection (a)(3) exists. See 720 ILCS 5/24-1.6(a)(1)-(a)(3) (West 2012); *People v. Zimmerman*, 239 Ill. 2d 491, 499 (2010) (the factors in subsection (a)(3) transform the crime from "simple" unlawful use of a weapon to aggravated unlawful use of a weapon). The following factors are relevant to this case: subsection (a)(3)(A), the firearm was uncased, loaded and immediately accessible; subsection (a)(3)(C), the person possessing the firearm had not been issued a valid FOID card; and subsection (a)(3)(I), the person possessing the firearm, a handgun, was under 21 years of age and not engaged in lawful activities prescribed under the Wildlife Code (520 ILCS 5/1.1 *et seq.* (West 2012)). See 720 ILCS 5/24-1.6(a)(3)(A), (C), (I) (West 2012). Additionally, section 24-1.6(d), entitled "Sentence," provides that AUUW is a Class 4 felony unless certain circumstances exist which mandate a greater sentence. 720 ILCS 5/24-1.6(d) (West 2012).

---

[6]While this case was pending, defendant filed a "Motion for Judicial Notice of Appendix to State's Brief in *People v. Klepper*, 234 Ill. 2d 337 (2009)," asking that we consider statements made by the trial court therein to clarify ambiguity in its judgment. We ordered defendant's motion taken with the case and now allow that motion, as we may take judicial notice of briefs filed in another case. See *People v. Glasper*, 234 Ill. 2d 173, 190 (2009) ("at defendant's behest, we have reviewed the briefs filed in [*People v. Zehr*, 103 Ill. 2d 472 (1984),] and take judicial notice [of the issues raised]"); see also *People v. Mata*, 217 Ill. 2d 535, 539 (2005).

¶ 19     Here, as outlined above, defendant was charged and originally convicted of six counts of AUUW. The following chart explains the statutory subsections upon which these counts were based:

| AUUW Subsections Under Which Defendant Was Charged/Convicted | | |
| --- | --- | --- |
| 720 ILCS 5/24-1.6: | (a)(1)—Person or Vehicle | (a)(2)—Public Way |
| (a)(3)(A)—Uncased, Loaded Firearm | count II | count V |
| (a)(3)(C)—No FOID Card | count III | count VI |
| (a)(3)(I)—Under 21 and Not Engaged in Lawful Hunting Activities | count IV | count VII |

¶ 20                                    Constitutionality of the AUUW Statute

¶ 21     We are asked in this case to decide whether the subsections of the AUUW statute under which defendant was originally convicted, as well as a sentencing section, violate constitutional principles such that the trial court properly vacated those convictions. Here, in holding portions of the AUUW statute unconstitutional, the trial court found that certain subsections of the statute violated, both on their face and as applied, one or more of the following: (1) defendant's right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution (U.S. Const., amend. II); (2) his due process rights under both the United States (U.S. Const., amend. XIV) and Illinois Constitutions (Ill. Const. 1970, art. I, § 2); or (3) the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). On appeal, defendant raises additional contentions that certain of his original convictions were unconstitutional based on violations of both his equal protection and due process rights under the United States and Illinois Constitutions. *In re J.W.*, 204 Ill. 2d 50, 61 (2003) (a constitutional challenge to a criminal statute can be raised at any time).

¶ 22     All statutes carry a strong presumption of constitutionality. *People v. Aguilar*, 2013 IL 112116, ¶ 15. This court will find a statute constitutional and, therefore, valid if it can be reasonably done. *Id*. To overcome this presumption, the party challenging the statute must clearly establish its invalidity. *People v. Guevara*, 216 Ill. 2d 533, 543 (2005). The question of whether a statute is constitutional is a question of law, which this court reviews *de novo*. *Aguilar*, 2013 IL 112116, ¶ 15; *People v. Dinelli*, 217 Ill. 2d 387, 397 (2005). We apply these principles in reviewing the propriety of each of the constitutional violations found by the trial court, or argued by defendant.

¶ 23                                    The Right to Keep and Bear Arms

¶ 24     During the pendency of the State's appeal, this court in *People v. Aguilar*, 2013 IL 112116, ¶ 21, held the Class 4 form of AUUW set forth in section 24-1.6(a)(1), (a)(3)(A), (d), which prohibited carrying on one's person or in any vehicle, outside the home, a firearm which was uncased, loaded and immediately accessible, to be a comprehensive ban that categorically prohibited possession and use of a firearm for self-defense outside of the home. Accordingly, this court held the subsection at issue to be facially unconstitutional because it violated the second amendment right to keep and bear arms. *Id.* ¶ 22. Although the trial court herein did not have the benefit of our decision in *Aguilar* in making its Rule 18 findings, because defendant's conviction under count II involves the same subsection of the AUUW statute found

unconstitutional in *Aguilar*, that portion of the trial court's judgment vacating count II is affirmed. See *People v. Henderson*, 2013 IL App (1st) 113294, ¶ 11 (where *Aguilar* squarely resolved issue presented by declaring same section of statute facially unconstitutional, the ultimate outcome would be to vacate defendant's conviction based upon that statutory section); *People v. Jamesson*, 329 Ill. App. 3d 446, 451-52 (2002) (citing *People v. Zeisler*, 125 Ill. 2d 42, 48 (1988) (noting that the doctrine of void *ab initio* declares an unconstitutional statute null and void as of the date of its enactment, "which results in the court's vacating a conviction based upon such statute")).

¶ 25    We next address whether, in light of *Aguilar*, defendant's conviction under count V, for violating section 24-1.6(a)(2), (a)(3)(A), was properly vacated where this count also concerns carrying, outside the home, a firearm which is uncased, loaded and immediately accessible.[7] In *Aguilar*, 2013 IL 112116, ¶ 19, we adopted the holding in *Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012), which held that Illinois's "flat ban on carrying ready-to-use guns outside the home," as embodied in the Class 4 form of section 24-1.6(a)(1), is unconstitutional. The only distinction between the section invalidated in *Aguilar* and the section under which defendant was originally convicted in count V is the location where one possesses an uncased, loaded and immediately accessible firearm. See *People v. Akins*, 2014 IL App (1st) 093418-B, ¶ 11. If, under *Aguilar*, a person cannot be barred from carrying an uncased, loaded and immediately accessible firearm while in a vehicle or concealed on or about his or her person based on the second amendment of the United States Constitution, it is logical that the same conduct should not be barred when the alleged offender similarly carries a firearm on a public way. Indeed, we determined in *Aguilar*, 2013 IL 112116, ¶ 18, that neither *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), nor *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010), expressly limited the second amendment's protections to the home. We therefore agree with the appellate court in *Akins*, 2014 IL App (1st) 093418-B, ¶ 11, that the reasoning in *Aguilar* extends to a conviction under section 24-1.6(a)(2), (a)(3)(A) for possession of an uncased, loaded firearm on a public way. 720 ILCS 5/24-1.6(a)(2), (a)(3)(A) (West 2012). As that section of the AUUW statute cannot be reasonably held constitutional, the trial court's judgment vacating count V is affirmed. *Akins*, 2014 IL App (1st) 093418-B, ¶ 11 (vacating, as void *ab initio*, defendant's AUUW conviction based on section 24-1.6(a)(2), (a)(3)(A) of the AUUW statute).

¶ 26                                    Severability

¶ 27    Next, defendant argues that the subsections of the AUUW statute set forth in counts III through VII are not severable from section 24-1.6(a)(1), (a)(3)(A), which this court declared unconstitutional in *Aguilar*. Given that we have now additionally found section 24-1.6(a)(2), (a)(3)(A), as charged in count V, to be unconstitutional, we consider the severability of the remaining four subsections at issue to determine if they are severable from both (a)(3)(A) subsections.

---

[7]We repeat that while the court failed to specifically cite the basis for its vacation of certain subsections of the AUUW statute in its Rule 18 order, it attempted to clarify its holding by later stating that it found the entirety of section 24-1.6(a) unconstitutional. Regardless, we may affirm or reject the lower court's holdings based on any reason supported by the record. *Beacham v. Walker*, 231 Ill. 2d 51, 61 (2008) ("[T]his court may affirm the circuit court's judgment on any basis contained in the record.").

¶ 28    As stated, defendant was charged in counts III and VI with possessing a firearm while, respectively, outside his home and on a public way, and without a valid FOID card. 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2012); 720 ILCS 5/24-1.6(a)(2), (a)(3)(C) (West 2012). He was charged in counts IV and VII with possessing a firearm while, respectively, outside his home and on a public way, and being under 21 years of age and not engaged in lawful hunting activities. 720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2012); 720 ILCS 5/24-1.6(a)(2), (a)(3)(I) (West 2012). Without citing any authority, defendant argues that the purpose of the AUUW statute is a comprehensive ban on gun possession and that the statute would not have been enacted without the portion struck down in *Aguilar,* because the legislature "operating under the erroneous assumption that Illinois could categorically ban the possession of operable firearms outside the home." The State, however, argues that both subsections (a)(3)(C) and (a)(3)(I) continue to set forth constitutionally valid offenses, regardless of whether subsection (a)(3)(A) creates an operable offense or not. That is, the State—citing *People v. Pomykala*, 203 Ill. 2d 198, 209 (2003), and *People v. Henderson*, 2013 IL App (1st) 113294, ¶¶ 22-26—contends that those subsections are individually complete and capable of being executed wholly independently of whether subsection (a)(3)(A) is an operable offense. Based on the following case law, we agree with the State's proposition.

¶ 29    The issue of severability involves a question of statutory construction, which primarily involves ascertaining and giving effect to the intent of the legislature. *People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513, 534 (1990). In determining whether a statutory provision containing an unconstitutional portion may be severed from the rest of a statute, we first look at the statute's own specific severability provision. *People v. Alexander*, 204 Ill. 2d 472, 484 (2003). If no specific severability clause is in the statute, we look to the Statute on Statutes' general severability provision, which states in pertinent part: " 'If any provision of an Act *** is held invalid, such invalidity does not affect other provisions *** of the Act which can be given effect without the invalid *** provision, and to this end the provisions of each Act *** are severable, unless otherwise provided by the Act.' " *Alexander*, 204 Ill. 2d at 484 (quoting 5 ILCS 70/1.31 (West 2000)).

¶ 30    Here, the AUUW statute at issue (720 ILCS 5/24-1.6 (West 2012)), does not contain its own specific severability provision. Thus, pursuant to the Statute on Statutes (5 ILCS 70/1.31 (West 2012)), we must determine whether the valid and invalid portions of the statute are essentially and inseparably connected in substance, such that the legislature would not have passed the valid portions of the statute absent the invalid portion. *Alexander*, 204 Ill. 2d at 484; see also *Fiorito v. Jones*, 39 Ill. 2d 531, 540 (1968) (subsections are not severable if it is this court's belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently). Consequently, we may remove an unconstitutional portion of a statute and preserve the remainder if what remains is complete in and of itself, and is capable of being executed wholly independently of the severed portion. *Pomykala*, 203 Ill. 2d at 209-10 (concluding that section 9-3(b) of the Criminal Code of 1961 (720 ILCS 5/9-3 (West 2000)) may be severed from the remainder of the statute); *People v. Sanders*, 182 Ill. 2d 524, 534 (1998) (finding section 2(c) of the Hunter Interference Prohibition Act (720 ILCS 125/2 (West 1996)) severable from the remaining statute).

¶ 31    In *Henderson*, 2013 IL App (1st) 113294, ¶ 22, the appellate court used the above reasoning when considering a severability question in the aftermath of *Aguilar*:

- 11 -

"From our reading of the [AUUW] statute as a whole (*e.g.*, *People v. Lloyd*, 2013 IL 113510, ¶ 25), we find that the invalidity of subsection (a)(3)(A) by *Aguilar* is not fatal to the balance of the statute, particularly the FOID card requirement in subsection (a)(3)(C), which forms the basis for defendant's conviction on count V. Although *Aguilar* did not expressly pass on the issue of whether subsection (a)(3)(A) is severable from the balance of the statute, we are mindful of our obligation to uphold legislative enactments whenever reasonably possible, and we believe that subsections (a)(1), (a)(2), and the remaining factors in subsection (a)(3) can stand independently of subsection (a)(3)(A), which is only one of several factors that operate in conjunction with subsection (a)(1) or (a)(2) to comprise the substantive offense. *People v. Sanders*, 182 Ill. 2d 524, 534 (1998). Because the removal of one factor (subsection (a)(3)(A)) by application of *Aguilar* 'undermines neither the completeness nor the executability of the remaining subsections' (*Sanders*, 182 Ill. 2d at 534), we cannot conclude that it is 'so intertwined with the rest of the statute that the legislature intended the statute to stand or fall as a whole' (*People v. Singmouangthong*, 334 Ill. App. 3d 542, 547 (2002)). *Tully v. Edgar*, 171 Ill. 2d 297, 313 (1996)." *Henderson*, 2013 IL App (1st) 113294, ¶ 22.

See also *People v. Akins*, 2014 IL App (1st) 093418-B, ¶¶ 12-13 (applying the reasoning of *Henderson* to reject defendant's argument that subsection (a)(3)(C) cannot be severed from provision of AUUW statute found unconstitutional in *Aguilar*).

*Henderson*, 2013 IL App (1st) 113294, ¶ 26, further noted that the "balance of the [AUUW] statute," was a continuing reflection of the statute's legislative purpose to protect the police and public from dangerous weapons. Thus, given this court's proviso in *Aguilar*, 2013 IL 112116, ¶ 21, that "we are in no way saying that [the second amendment right to keep and bear arms] is unlimited or is not subject to meaningful regulation," and the finding by the United States Court of Appeals for the Seventh Circuit in *Moore v. Madigan*, 702 F.3d 933, 941 (7th Cir. 2012), that the Illinois legislature could implement sensible requirements for the public carriage of handguns without running afoul of the second amendment, the appellate court therein declined to accept the defendant's assertion against severability of the unconstitutional section of *Aguilar*. *Henderson*, 2013 IL App (1st) 113294, ¶¶ 24-26. We again find the reasoning in *Henderson* sound and, therefore believe that the legislature would find that subsections (a)(3)(C) and (a)(3)(I) can stand independently without the inclusion of subsection factor (a)(3)(A). This severability from subsection (a)(3)(A) undermines neither the completeness of, nor the ability to execute, the remaining subsections of section (a)(3). See *Sanders*, 182 Ill. 2d at 534.

¶ 32                    Second Amendment Rights of 18- to 20-Year-Olds

¶ 33    Next, we address the trial court's findings, and defendant's contentions, that his AUUW convictions under the "FOID card" subsections, (a)(1), (a)(3)(C) and (a)(2), (a)(3)(C), as well as the "under 21" subsections (a)(1), (a)(3)(I) and (a)(2), (a)(3)(I), unconstitutionally disarm young adults who are 18 to 20 years old in violation of the second amendment. U.S. Const., amend. II. Again, the FOID card subsections prohibit the possession of a firearm while outside one's home or on a public way and without a valid FOID card, while the under 21 subsections prohibit the possession of a firearm while outside one's home or on a public way while under

21 years of age and not engaged in lawful hunting activities. Defendant claims that adults 18 and over are among "the People," protected by the second amendment. In support of this proposition, defendant cites *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), and its discussion of the First Militia Act, enacted by Congress in 1792, which created the organized militia and provided in the definition of "able-bodied men," to include males as young as 18. *Heller*, 554 U.S. at 596 (citing Act of May 8, 1792, 1 Stat. 271). Accordingly, defendant argues that subsections (a)(3)(C) and (a)(3)(I) impose burdens on those, like himself, aged 18 to 20 which amount to an unconstitutional flat ban on their second amendment rights.

¶ 34    When analyzing the constitutionality of a restriction on the second amendment right to bear arms, we apply the two-part approach this court adopted in *Wilson v. County of Cook*, 2012 IL 112026, ¶ 41. Under this approach, the court first conducts a textual and historical inquiry to determine whether the challenged law imposes a burden on conduct that was understood to be within the scope of the second amendment's protection at the time of ratification. *Id.* The regulated activity is categorically unprotected if the challenged law applies to conduct falling outside the scope of the second amendment right. *Id.* However, if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected, then the court, applying the appropriate level of means-ends scrutiny, conducts a second inquiry into the strength of the government's justification for restricting or regulating the exercise of second amendment rights. *Id.* ¶ 42; see also *People v. Henderson*, 2013 IL App (1st) 113294, ¶ 29; *Ezell v. City of Chicago*, 651 F.3d 684, 701-04 (7th Cir. 2011).

¶ 35    Therefore, in determining whether the conduct set forth in subsections (a)(3)(C) and (a)(3)(I) infringes on the second amendment rights of 18- to 20-year-olds, we must first examine whether that conduct is at the core of the right to bear arms. Once more, we find relevant the reasoning of the appellate court in *Henderson*, 2013 IL App (1st) 113294, which relied upon our decision in *Aguilar* in applying the *Wilson* approach to the FOID card subsection (a)(3)(C), of the AUUW:

> "[I]n *Aguilar*, the supreme court expressly agreed with the 'obvious and undeniable' conclusion of those courts, since *Heller*, which have undertaken a comprehensive historical examination of 'presumptively lawful regulatory measures,' *e.g.*, laws proscribing the carriage of firearms in sensitive places such as schools and government buildings, and cited with approval several cases, all of which concluded that the possession of handguns by minors is conduct that falls outside the second amendment's core protection. *Aguilar*, 2013 IL 112116, ¶¶ 26-27 (citing *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 204 (5th Cir. 2012) (concluding that '[m]odern restrictions on the ability of persons under 21 to purchase handguns—and the ability of persons under 18 to possess handguns—seem, to us, to be firmly historically rooted'), *United States v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009) (concluding that the 'right to keep arms in the founding period did not extend to juveniles'), and *Powell v. Tompkins*, 926 F. Supp. 2d 367, 387-90 (D. Mass. 2013) (holding that a Massachusetts law proscribing the carry of firearms by persons under the age of 21 'comports with the Second Amendment and imposes no burden on' the right to keep and bear arms)). We thus reject defendant's contention that the public carriage of handguns by those under 21 is core conduct subject to second amendment protection." *Henderson*, 2013 IL App (1st) 113294, ¶ 30.

¶ 36    Indeed, we find the FOID card requirement of subsection (a)(3)(C) is consistent with this court's recognition that the second amendment right to possess firearms is still "subject to meaningful regulation." *Aguilar*, 2013 IL 112116, ¶ 21; see also *People v. Taylor*, 2013 IL App (1st) 110166, ¶¶ 28-32 (holding subsection (a)(3)(C) does not violate the second amendment where it contains a reasonable restriction on firearm possession, *i.e.*, the restriction is limited to those lacking a FOID card and is not a flat ban); *National Rifle Ass'n of America, Inc. v. McCraw*, 719 F.3d 338, 347 (5th Cir. 2013) (upholding, after conducting an extensive historical analysis, Texas statutory ban on persons under 21 years of age from possessing guns in public because that conduct "falls outside the Second Amendment's protection" (internal quotation marks omitted)); *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 204 n.17 (5th Cir. 2012) (finding defendant's militia-based argument unavailing for various reasons). Furthermore, because we agree with the reasoning of *Henderson*, we find it unnecessary to repeat the historical evidence set forth in the decisions cited by *Aguilar*. See *Aguilar*, 2013 IL 112116, ¶ 27. Rather, we simply conclude that where "the possession of handguns by minors is conduct that falls outside the scope of the second amendment's protection" (*id.*), subsection (a)(3)(C) passes the first half of the *Wilson* analysis, and we are not required to undertake the second half analysis. See *Wilson v. County of Cook*, 2012 IL 112026, ¶ 41.

¶ 37    Next, in considering whether subsection (a)(3)(I) is constitutional under *Wilson*, we similarly find that the restriction on persons under the age of 21 who are not engaged in lawful hunting activities is both historically rooted and not a core conduct subject to second amendment protection. Moreover, the restriction included in subsection (a)(3)(I) provides for multiple exceptions and exemptions to protect the rights of law-abiding persons under the age of 21. See, *e.g.*, 720 ILCS 5/24-2(b)(1), (b)(3), (f) (West 2012). Therefore, subsection (a)(3)(I) also passes the first part of the *Wilson* analysis and, as with defendant's challenge to subsection (a)(3)(C), a second half analysis under *Wilson* is unnecessary. See *Wilson*, 2012 IL 112026, ¶ 41.

¶ 38    Accordingly, we conclude that, under the *Wilson* approach, neither subsection (a)(3)(C), nor subsection (a)(3)(I) violates the second amendment rights of defendant or other 18- to 20-year-old persons.

¶ 39                                Equal Protection Challenges

¶ 40    Defendant also argues on appeal that the AUUW statute's distinction between those over and under 21 years of age, as found in subsections (a)(3)(C) and (a)(3)(I), violates the equal protection clause of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV), by placing an additional burden on the fundamental right to bear arms of those aged 18 to 20 than that placed on those over the age of 21. The constitutional right to equal protection under the law requires the government to treat similarly situated persons in the same manner. *People v. Warren*, 173 Ill. 2d 348, 361 (1996). The guarantee of equal protection of the United States and Illinois Constitutions does not preclude the state from enacting legislation that draws distinctions between different categories of people, but it does prohibit the state from according unequal treatment to persons who have been placed by a statute into different classes on the basis of criteria wholly unrelated to the purpose of the legislation. *People v. Fisher*, 184 Ill. 2d 441 (1998). A court uses the same analysis in assessing equal

protection claims under both the state and federal constitutions. *People v. Reed*, 148 Ill. 2d 1, 7 (1992). We repeat that statutes enjoy a strong presumption of constitutionality and we are required to uphold the constitutionality of a statute whenever reasonably possible. *Aguilar*, 2013 IL 112116, ¶ 15. The party challenging the constitutionality of the statute has the burden to prove its invalidity. *Id.*

¶ 41    We disagree with defendant's argument that strict scrutiny applies to this equal protection claim because the FOID card and under 21 subsections impinge on a fundamental right. When analyzing legislation under equal protection, the level of scrutiny to be applied depends on the type of legislative classification at issue. *In re Detention of Samuelson*, 189 Ill. 2d 548, 561 (2000). As discussed above, the challenged statutory provisions do not burden a fundamental right at the core of the second amendment. Accordingly, both Illinois and federal courts have routinely held that because age is not a suspect class for purposes of equal protection analysis, this court applies the rational basis standard. See *People v. M.A.*, 124 Ill. 2d 135, 140 (1988); see also *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 212 (5th Cir. 2012) (applying rational basis to equal protection challenge of Texas gun law where persons under 21 had no fundamental right under second amendment and age was not a suspect classification). Thus, we evaluate the age restrictions of the AUUW statute merely to determine whether they rationally relate to a legitimate government interest. See *People v. Alcozer*, 241 Ill. 2d 248, 262-63 (2011); *In re Detention of Samuelson*, 189 Ill. 2d at 562 (judicial review of legislative classifications under the rational basis test is limited and generally deferential).

¶ 42    As mentioned, Illinois appellate courts have upheld the validity of the AUUW statute since its enactment, finding that the state has a legitimate interest in protecting the public and the police from the possession and use of dangerous weapons. See *Henderson*, 2013 IL App (1st) 113294, ¶ 26; *People v. Pulley*, 345 Ill. App. 3d 916, 924 (2004); *People v. Marin*, 342 Ill. App. 3d 716, 723-24 (2003); see also *People v. Williams*, 60 Ill. App. 3d 726, 727 (1978) (the unlawful use of a weapon statute demonstrates a "legislative intent to regulate the possession and use of weapons for the safety and good order of society"). Additionally, other courts have upheld age restrictions placed on those under 21 years of age by concluding that, given the immaturity and impulsivity of youth, prohibiting the public carrying of handguns for individuals under age 21 is substantially related to that important public interest. See *National Rifle Ass'n of America, Inc.*, 700 F.3d at 207-10 & n.21 (cataloging congressional findings about the disproportionate arrest rate for violent crimes among those under age 21 and stating that "[a]mong murderers, 18- to 20-year olds were more likely to use a firearm than adults 21 and over" and that "modern scientific research supports the commonsense notion that 18-to-20-year-olds tend to be more impulsive than young adults aged 21 and over"); see also *People v. Alvarado*, 2011 IL App (1st) 082957, ¶ 53 (finding, *inter alia*, that subsections (a)(3)(C) and (a)(3)(I) of the AUUW statute did not violate defendant's equal protection rights), *vacated on other grounds*, No. 113757 (Ill. Jan. 29, 2014) (supervisory order). Therefore, it is clear that an extensive relationship exists between reasonable restrictions on the use of firearms by persons under the age of 21 and the state's interest in protecting the public and police. As such, we cannot find that defendant has carried his burden of proving subsections (a)(3)(C) and (a)(3)(I) of the AUUW statute do not rationally relate to a legitimate government interest, and we reject defendant's equal protection claims.

¶ 44       We also reject defendant's argument that, under due process, subsection (a)(3)(C) and the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/0.01 (West 2012)) are unconstitutional, both facially and as applied. Defendant relies on the trial court finding that subsection (a)(3)(C), in combination with the FOID Card Act, violates due process by placing special burdens on the ability of defendant, and all similarly situated 18- to 20-year-old adults, to obtain a FOID card. The relevant portions of the FOID Card Act states as follows:

"(a) Each applicant for a Firearm Owner's Identification Card must:

***

(2) Submit evidence to the Department of State Police that:

(i) He or she is 21 years of age or over, or if he or she is under 21 years of age that he or she has the written consent of his or her parent or legal guardian to possess and acquire firearms and firearm ammunition *** provided, however, that such parent or legal guardian is not an individual prohibited from having a [FOID] Card ***[.]

(ii) He or she has not been convicted of a felony under the laws of this or any other jurisdiction[.]" 430 ILCS 65/4(a)(2)(i), (ii) (West 2012).

¶ 45       Defendant contends that in order to avoid prosecution under subsection (a)(3)(C) of the AUUW statute, he must obtain a FOID card, *i.e.*, that the FOID Card Act places additional, special burdens on adults aged 18 to 20 by requiring them to first get permission from a parent before they can successfully apply for a FOID card. However, under the FOID Card Act, because he is under 21 years of age and both his parents have felony convictions, thus prohibiting them from having a FOID card, he cannot obtain their consent and, consequently, it is impossible for him to obtain a FOID card.

¶ 46       The State, in response, argues that the trial court's as applied finding of unconstitutionality, made without the benefit of an evidentiary hearing, is flawed where no evidence of record supports a finding that defendant: (1) ever applied for a FOID card; (2) was ever denied a FOID card or ever appealed that denial; did not have a legal guardian who could have given valid consent to apply for a FOID card, or could not have had such a guardian appointed. See 430 ILCS 65/0.01 *et seq.* (West 2012). The State points to the trial court's assumption that defendant's constitutional rights were violated based on the presentence investigation report statement that defendant was unable to get a FOID card because his parents had been "incarcerated." However, the fact that a person has been "incarcerated" does not, without more information, establish that they have been convicted of a felony, but may simply mean that they have been in jail. See *People v. Riley*, 2013 IL App (1st) 112472, ¶ 10 (finding that "incarceration," which is not defined in the Code of Criminal Procedure or the Code of Corrections or any other relevant statute, is limited to " ' "[i]mprisonment; confinement in a jail or penitentiary." ' " (quoting *People v. Kuhns*, 372 Ill. App. 3d 829, 839 (2007) (Gilleran Johnson, J., concurring in part and dissenting in part), quoting Black's Law Dictionary 760 (6th ed. 1990)). Further, at the March 8, 2013 hearing, the State questioned whether defendant had any potential legal guardian who might be eligible to consent to his FOID card application, but the court failed to consider the State's question in its order. The State, therefore, contends that because there is no evidence that defendant ever actually applied for a FOID card and was rejected, he lacks standing to make a due process claim. Thus, the State contends that under the

record before this court, defendant cannot challenge the constitutionality of subsection (a)(3)(C).

¶ 47   We agree that it is improper for this court to render a decision on this issue given the lack of evidence presently before us. Indeed, we have stated:

> "A court is not capable of making an 'as applied' determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional 'as applied' is premature. [Citations.] Nor would it be appropriate for this court, *sua sponte*, to consider whether [a] statute has been constitutionally applied since we, as a reviewing court, are not arbiters of the facts." *In re Parentage of John M.*, 212 Ill. 2d 253, 268 (2004).

¶ 48   Additionally, "[t]o have standing to challenge the constitutionality of a statute, one must have sustained or be in immediate danger of sustaining a direct injury as a result of enforcement of the challenged statute." *Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago*, 189 Ill. 2d 200, 206 (2000). We cannot make such a finding in this case without the trial court conducting an evidentiary hearing setting forth a factual foundation. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 228 (2010) (reversing the circuit court's as applied ruling when there had been no evidentiary hearing and no findings of fact). Therefore, we hold that defendant has not upheld his burden to establish that the AUUW statute, as applied to him, violates his due process rights.

¶ 49   When there has been no evidentiary hearing and no findings of fact, the constitutional challenge must be facial. *Lebron*, 237 Ill. 2d at 228 (citing *In re Parentage of John M.*, 212 Ill. 2d 253, 268 (2004)); *Reno v. Flores*, 507 U.S. 292, 300-01 (1993). To find a statute facially invalid, no set of circumstances may exist under which the statute would be valid. *Lebron*, 237 Ill. 2d at 228.

¶ 50   Contrary to the trial court's order, the FOID Card Act (430 ILCS 65/0.01 *et seq.* (West 2012)), however, does not amount to an outright prohibition against those under the age of 21 who wish to obtain a FOID card. In fact, the Act mandates individualized consideration of a person's FOID card application and circumstances by the department of state police and the judiciary. *Coram v. State*, 2013 IL 113867, ¶ 58 (citing 430 ILCS 65/5, 8, 10 (West 2010)). Minors aged 18 to 20, and even younger, have an opportunity to obtain a FOID card by supplying a parental signature. 430 ILCS 65/4 (West 2012). Even if a parental signature is unavailable, an applicant can appeal to the Director of the Department of State Police. 430 ILCS 65/10 (West 2012). Furthermore, the Department of State Police has promulgated rules setting forth procedures for such appeals and providing that the Director may grant relief to persons under the age of 21 (20 Ill. Adm. Code 1230.70(d)(3) (eff. Dec. 31, 2013)) and the Director's decisions are subject to judicial review (430 ILCS 65/11 (West 2012)). These provisions demonstrate that it is not impossible for a person under the age of 21 to obtain a FOID card without his or her parents' permission or signature. As such, the fact that the FOID Card Act could be found constitutional under some set of circumstances, *i.e.*, appeal a prohibition to the Director of the Department of State Police, defendant's facial challenge must fail. See *Lebron*, 237 Ill. 2d at 261 (Karmeier, J., concurring in part and dissenting in part, joined by Garman, J.) (citing *In re M.T.*, 221 Ill. 2d 517, 536-37 (2006)).

¶ 51　　　　　　　　Constitutionality/Severability of Sentencing Subsection (d)(2)

¶ 52　　　Under the statute applicable here, due to defendant's age and his convictions based on subsections (a)(3)(A) and (a)(3)(C) of the AUUW statute, he faced a mandatory term of imprisonment under subsection (d)(2) of the statute's sentencing provision. See 720 ILCS 5/24-1.6(d)(2) (West 2012). As noted, following posttrial proceedings, the court held subsection (d)(2) unconstitutional. We find that section (d)(2) is invalid, as it incorporates subsection (a)(3)(A), found to be unconstitutional in *Aguilar*.

¶ 53　　　At all times pertinent to this case, AUUW section 24-1.6(d)(2), stated as follows:

　　　　　"(2) Except as otherwise provided in paragraphs (3) and (4) of this subsection (d), a first offense of aggravated unlawful use of a weapon committed with a firearm by a person 18 years of age or older where the factors listed in both items (A) and (C) of paragraph (3) of subsection (a) are present is a Class 4 felony, for which the person shall be sentenced to a term of imprisonment of not less than one year and not more than 3 years." 720 ILCS 5/24-1.6(d)(2) (West 2012).[8]

The State contends that a defendant may be sentenced under subsection (d)(2) when the "factors listed in both *items* (A) and (C) *** are *present*." (Emphases added.) 720 ILCS 5/24-1.6(d)(2) (West 2012). Essentially, the State asks this court to find this language does not refer to the existence of the *offenses* stated in subsections (a)(3)(A) and (a)(3)(C), but rather that the *facts* identified in those "items" are "present," *i.e.*, that the facts of the case establish that defendant had an uncased, loaded weapon and was not issued a FOID card. We decline to do so.

¶ 54　　　Indeed, to accept the State's interpretation, this court would have to ignore the plain and ordinary language of the statute. *People v. Perez*, 2014 IL 115927, ¶ 9 (the best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning). Here, the plain language of the sentencing provision in subsection (d)(2) directly references the AUUW offense stated in subsection (a)(3)(A). See *People v. Zimmerman*, 239 Ill. 2d 491, 499 (2010) (the factors in subsection (a)(3) transform the crime from "simple" unlawful use of a weapon to aggravated unlawful use of a weapon). Thus, under its plain language, a person may only be sentenced under subsection (d)(2) if the factors constituting the AUUW offenses identified in both subsections (a)(3)(A) *and* (a)(3)(C) are present.

¶ 55　　　However, because subsection (a)(3)(A) has been found unconstitutional, the requirements for sentencing under subsection (d)(2) cannot be met, as a statutory section cannot be "present" if it is void *ab initio*. In *People v. Blair*, 2013 IL 114122, ¶ 28, this court recently discussed the meaning of the void *ab initio* doctrine, stating, in part: "When a statute is held facially unconstitutional, *i.e.*, unconstitutional in all its applications [citation], the statute is said to be void *ab initio. Lucien v. Briley*, 213 Ill. 2d 340, 344-45 (2004); *Hill v. Cowan*, 202 Ill. 2d 151, 156 (2002) [citations]." An unconstitutional statute is, literally, "void 'from the beginning.' See Black's Law Dictionary 1604 (8th ed. 2004)." *Perlstein v. Wolk*, 218 Ill. 2d 448, 455 (2006). Therefore, as this court has found subsection (a)(3)(A) to be void from its beginning, it

_____

[8]While this version of the AUUW statute was replaced by Pub. Act 98-63, § 155 (eff. July 9, 2013), there is no change in the language of subsection (d)(2) which would affect our decision under the facts of this case.

was never validly incorporated into the sentencing subsection (d)(2). Accordingly, we find subsection (2) of sentencing subsection (d) of the AUUW statute to be invalid, as it requires a conviction based upon an unconstitutional and unenforceable statutory section. See *Blair*, 2013 IL 114122, ¶ 30 (statute declared unconstitutional was infirm from the moment of its enactment and, therefore, unenforceable). We thus examine the severability of subsection (d)(2).

¶ 56    As noted earlier, the AUUW statute is examined under the Statute on Statutes' general severability provision, which states in pertinent part: " 'If any provision of an Act *** is held invalid, such invalidity does not affect other provisions *** of the Act which can be given effect without the invalid *** provision, and to this end the provisions of each Act *** are severable, unless otherwise provided by the Act.' " *Alexander*, 204 Ill. 2d at 484 (quoting 5 ILCS 70/1.31 (West 2000)). Although general severability statutes carry less weight in ascertaining legislative intent than specific severability clauses, they do establish a presumption that the legislature intended for an invalid statutory provision to be severable. *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25, 48 (1995) (citing *People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513, 532 (1990)). This presumption will be overcome and the entire act held unconstitutional if the legislative body would not have passed the statute with the invalid portion eliminated. *Id.*

¶ 57    Here, we believe it is clear that the legislature would have intended that the AUUW statute remain in force despite the invalidity of sentencing subsection (d)(2). This portion of the sentencing provision is not such an interdependent and essential part of the statute that its severance requires the remainder of the statute to fail. As the appellate court found in *Henderson*, 2013 IL App (1st) 113294, ¶ 26, the "balance of the [AUUW] statute," is a continuing reflection of the statute's legislative purpose to protect the police and public from dangerous weapons. Given the severability of the unconstitutional subsection (a)(3)(A), this legislative purpose is not defeated by the invalidation of a sentencing provision citing to that subsection, and we may leave the remainder of the statute in force. See *Northern Illinois Home Builders*, 165 Ill. 2d at 49. Thus, we find that defendant may properly be sentenced, on remand, to the applicable provision of section (d) of the statute.

¶ 58                          Proportionate Penalties Violation

¶ 59    Finally, the trial court found, and defendant argues on appeal, that section 24-1.6(d)(2) of the Criminal Code (720 ILCS 5/24-1.6(d)(2) (West 2012)), is unconstitutional because it violates the proportionate penalties clause of the Illinois Constitution. Ill. Const. 1970, art. I, § 11. However, as we have held that the sentencing provision in subsection (d)(2) is invalid, it is unnecessary to address this issue. See *People v. Clark*, 2014 IL 115776, ¶ 23.

¶ 60                                  CONCLUSION

¶ 61    For the reasons set forth above, we affirm the trial court's judgment vacating defendant's Class 4 convictions of AUUW under counts II and V, as the offenses charged therein are based on, respectively, statutory sections 24-1.6(a)(1), (a)(3)(A), and 24-1.6(a)(2), (a)(3)(A), which we find to be unconstitutional. Further, we reverse the trial court's judgment vacating defendant's Class 4 convictions of AUUW under counts III and VI, as the offenses charged therein are based on, respectively, statutory sections 24-1.6(a)(1), (a)(3)(C), and 24-1.6(a)(2),

(a)(3)(C), which we find to be constitutional and severable from the unconstitutional (a)(3)(A) subsection stated in counts II and V. We also reverse the trial court's judgment vacating defendant's Class 4 convictions of AUUW under counts IV and VII, as the offenses charged therein are based on, respectively, statutory sections 24-1.6(a)(1), (a)(3)(I), and 24-1.6(a)(2), (a)(3)(I), which we find to be constitutional and severable from the unconstitutional (a)(3)(A) subsection stated in counts II and V. Additionally, we find that portion of the AUUW statute set forth in section 24-1.6(d)(2) to be invalid, as that sentencing subsection relies upon the unconstitutional and void *ab initio* (a)(3)(A) subsection. 720 ILCS 5/24-1.6(d)(2) (West 2012). Finally, we vacate the trial court's judgment convicting and sentencing defendant for one count of misdemeanor UUW under section 24-1.6(d)(2) of the Criminal Code. 720 ILCS 5/24-1(a)(4) (West 2012). Accordingly, we remand this cause to the trial court for sentencing.

¶ 62    Circuit court judgment affirmed in part and reversed in part.

¶ 63    Cause remanded.