SIXTH DIVISION
June 29, 2018

No. 1-15-3373
2018 IL App (1st) 153373

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 4773 |
| | ) | |
| ARMANI BELL, | ) | Honorable |
| | ) | Maura Slattery Boyle, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justice Cunningham concurred in the judgment and opinion.
Presiding Justice Hoffman specially concurred, with opinion.

**OPINION**

¶ 1    Following a bench trial, defendant Armani Bell was found guilty of unlawful use of a weapon in a public park and sentenced to two years in the Illinois Department of Corrections. On appeal, defendant claims that the unlawful use of a weapon in a public park provision of the unlawful use of a weapon (UUW) statute is facially unconstitutional and that his mittimus should be corrected to accurately reflect the trial court's pronouncement that defendant was only to be sentenced on one conviction. For the following reasons, we affirm the conviction and order the mittimus to be corrected.

¶ 2                              BACKGROUND

¶ 3    Defendant was charged with one count of UUW and six counts of aggravated unlawful use of a weapon. Prior to trial, defendant filed a motion to dismiss count I of the indictment,

which charged defendant with unlawful use of a weapon in a public park pursuant to section 24-1(a)(10), (c)(1.5) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1(a)(10), (c)(1.5) (West 2014)).

¶ 4     At the hearing on defendant's motion to dismiss count I of the indictment based on the unconstitutionality of this provision of the statute, defense counsel argued that *People v. Aguilar*, 2013 IL 112116, and its progeny applied in this case. Defense counsel argued that the UUW statute at issue in this case was identical to the aggravated UUW statute analyzed in *Aguilar*. In *Aguilar*, our supreme court found that it was unconstitutional for the government to pass any law that is an unqualified ban on carrying ready-to-use weapons in public. Defense counsel noted that after he wrote his motion, he discovered that the Illinois legislature amended the UUW statute in question and added a fourth exception, which states that a person is not guilty of UUW on public land if that person can prove that he or she was carrying a firearm pursuant to the concealed carry law. Defense counsel argued that the amendment proves that the prior version of the statute, pursuant to which defendant was charged, was unconstitutional. The trial court disagreed and found that the statute was not unconstitutional, and "the motion regarding declaring that portion of the statute unconstitutional will be denied."

¶ 5     A bench trial then commenced. The facts presented at that bench trial are not at issue, but we will briefly discuss them. Chicago police officer Carlos Mendez, and his partner, received a radio transmission on the evening of March 11, 2015, at about 5:45 p.m., regarding a person with a gun at 6000 South King Drive. When Officer Mendez and his partner arrived at that location, he saw an individual matching the description in the radio transmission of a black male with a red jacket and beige pants standing on the corner with four other men, one of whom was defendant. When Officer Mendez arrived, defendant began to walk away. As Officer Mendez got

out of his patrol car, defendant started to run. Officer Mendez testified that as defendant was running, defendant reached into his waistband and pull out a gun. Officer Mendez and his partner gave chase. As they were chasing defendant, defendant slipped and the weapon fell to the ground. Officer Mendez secured the weapon, which was loaded, while his partner continued to chase defendant. Defendant was apprehended approximately 15 seconds later.

¶ 6     The State introduced into evidence a certification from the Illinois State Police, providing that no one with defendant's name and birthday had ever been issued a Firearm Owner's Identification (FOID) card or a concealed carry license as of April 29, 2015.

¶ 7     The trial court found that Officer Mendez's testimony was credible and subsequently found defendant guilty on all counts. At sentencing, the trial court merged the six AUUW counts into the UUW in a public park count and sentenced defendant to two years in prison on the UUW in a park conviction. Defendant filed a motion for reconsideration of sentence, which was denied. Defendant now appeals.

¶ 8                                    ANALYSIS

¶ 9     On appeal, defendant first contends that the statute upon which his conviction rests, section 24-1(a)(10), is facially unconstitutional. All statutes are presumed constitutional, and courts have a duty to construe legislative enactments so as to uphold their validity if reasonably possible. *Aguilar*, 2013 IL 112116, ¶ 15. To overcome this presumption, the party challenging the constitutionality of a statute has the burden of clearly establishing that it violates the constitution. *People v. Mosley*, 2015 IL 115872, ¶ 22. It is well settled that a facial challenge is the most difficult challenge to mount successfully, since the party challenging the statute must establish that no set of circumstances exists under which it would be valid. *In re C.E.*, 161 Ill. 2d

3

200, 210-11 (1994). The question of whether a statute is unconstitutional is a question of law, which this court reviews *de novo*. *Mosley*, 2015 IL 115872, ¶ 22.

¶ 10   Defendant was convicted pursuant to section 24-1(a)(10), (c)(1.5) of the UUW statute. The version of the UUW statute that was in effect at the time defendant was charged stated in pertinent part:

> "(a) A person commits the offense of unlawful use of weapons when he knowingly:

> * * *

>> (10) Carries or possesses on or about his person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm, except that this subsection (a)(10) does not apply to or affect transportation of weapons that meet one of the following conditions:

>>> (i) are broken down in a non-functioning state; or

>>> (ii) are not immediately accessible; or

>>> (iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card.

4

* * *

(c) Violations in specific places.

(1.5) A person who violates subsection 24-1(a)(4), 24-1(a)(9), or 24-1(a)(10) in any school, regardless of the time of day or the time of year, in residential property owned, operated, or managed by a public housing agency or leased by a public housing agency as part of a scattered site or mixed-income development, in a public park, in a courthouse, on the real property comprising any school, regardless of the time of day or the time of year, on residential property owned, operated, or managed by a public housing agency or leased by a public housing agency as part of a scattered site or mixed-income development, on the real property comprising any public park, on the real property comprising any courthouse, in any conveyance owned, leased, or contracted by a school to transport students to or from school or a school related activity, in any conveyance owned, leased, or contracted by a public transportation agency, or any public way within 1,000 feet of the real property comprising any school, public park, courthouse, public transportation facility, or residential property owned, operated, or managed by a public housing agency or leased by a public housing agency as part of a scattered site or mixed-income development commits a Class 3 felony." 720 ILCS 5/24-1(a)(10), (c)(1.5) (West 2014).

¶ 11    Defendant contends in his opening appellate brief that section 24-1(a)(10) of the UUW statute is facially unconstitutional because it amounts to a flat ban on carrying ready-to-use guns outside the home, which violates the second amendment of the United States Constitution. In

5

support of this argument, he cites *Mosley*, 2015 IL 115872, *People v. Burns*, 2015 IL 117387, and *Aguilar*, 2013 IL 112116.

¶ 12    In *Burns*, the defendant was convicted of violating section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)). *Burns*, 2015 IL 117387, ¶ 1. At sentencing, pursuant to the sentencing provision of the AUUW statute, section 24-1.6(d), the State presented proof of defendant's prior felony conviction to enhance the classification of the offense from a Class 4 felony to a Class 2 felony. *Id.* ¶ 13. The defendant argued before the Illinois Supreme Court that his conviction of the Class 2 form of the offense must be reversed in light of *Aguilar*, which found the Class 4 form of the same AUUW offense to be unconstitutional. *Id.* ¶ 20. The court agreed with the defendant's contention and reversed his conviction and sentence. *Id.* In so doing, the court found that section 24-1.6(a)(1), (a)(3)(A), of the AUUW statute was facially unconstitutional "without limitation" because "[t]he offense, as enacted by the legislature, does not include as an element of the offense the fact that the offender has a prior felony conviction." *Id.* ¶¶ 25, 29. As such, our supreme court found that there was only one offense of AUUW based on section 24-1.6(a)(1), (a)(3)(A), and a prior felony conviction that enhances the felony classification at sentencing is not an element of that offense but, rather, a sentencing factor which enhances the penalty from a Class 4 felony to a Class 2 felony. *Id.* ¶ 24.

¶ 13    Here, defendant argues that the penalty enhancement found under section 24-1(c)(1.5) of the UUW statute acts similarly to the sentencing enhancement of section 24-1.6(d) of the AUUW statute, and thus is a sentencing factor and not an element of the offense. This exact issue was recently addressed by our supreme court in *People v. Chairez*, 2018 IL 121417, which was issued after defendant filed his opening appellate brief. In *Chairez*, this court noted that "[u]nlike

in *Burns* where the felony enhancement came *after* the defendant was found guilty of the charged offense, the felony enhancement under section 24-1(c)(1.5) is a specific fact that must be proved to the trier of fact *prior* to a guilty finding." (Emphases in original.) *Id.* ¶ 17. Our supreme court elaborated, stating "[t]his difference is significant to our finding because any fact, other than a prior conviction, which, by law, increases the penalty for a crime, is an element of a distinct and aggravated crime that must be submitted to the jury." *Id.* That is the precise situation here, where, in order to enhance the offense from a Class A misdemeanor to a Class 3 form of UUW, the State must prove the aggravating fact that defendant was within a public park. 720 ILCS 5/24-1(a)(10), (c)(1.5) (West 2014). Our supreme court found that this conclusion was supported by the plain language of the UUW statute, where, unlike in *Burns*, section 24-1(c)(1.5) is separate and apart from the sentencing provision of the UUW statute, section 24-1(b).

¶ 14 We also reject, based on the analysis in *Chairez*, defendant's argument that because section 24-1(a)(10) was declared unconstitutional in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), his conviction which incorporates section 24-1(a)(10), cannot stand. Our supreme court in *Chairez* stated that defendant's argument failed because "his conviction is qualitatively different from that in *Moore*, as it incorporates a different element"—here, being within a public park. *Chairez*, 2018 IL 121417, ¶ 19. "This additional location element creates a separate offense from the offense at issue in *Moore*." *Id.* Accordingly, the *Chairez* court decided the issue raised in defendant's opening brief—that the potential unconstitutionality of section 24-1(a)(10) alone would not render section 24-1(a)(10), (c)(1.5) unconstitutional. *Chairez*, 2018 IL 121417, ¶¶ 58-62.

¶ 15 However, because *Chairez* was published while this appeal was pending, defendant addressed the unconstitutionality of section 24-1(a)(10), (c)(1.5) in his reply brief,

acknowledging that our supreme court found that the constitutionality of section 24-1(a)(10) would not have an effect on the provision at issue in this case, section 24-1(a)(10), (c)(1.5), and arguing that the "within a public park" provision was facially unconstitutional for the same reasons the court in *Chairez* found the "within 1000 feet of a public park" provision facially unconstitutional. *Chairez* had not been published before the State filed its response brief, and thus the State did not have an opportunity to address the merits of *Chairez*. Even without *Chairez*, the State nevertheless argued that section 24-1(a)(10), (c)(1.5) of the UUW statute was not facially unconstitutional because there was a significant interest in keeping children safe, as evidenced by studies that had been done regarding school zones and school shootings.

¶ 16   We now turn to the constitutionality of section 24-1(a)(10), (c)(1.5) of the UUW statute. The *Chairez* court addressed section 24-1(a)(4), (c)(1.5), of the UUW statute, but only made a finding as to the portion of that section that criminalized possessing a firearm within 1000 feet of a public park. While the only portion of the section before us is that criminalizing possession of a firearm within a public park, we find guidance in the analysis set forth in *Chairez*. See *Chairez*, 2018 IL 121417, ¶ 13 (because the various other "specific places" offenses set forth in section 24-1(c)(1.5) were not before the court, defendant lacked standing to challenge the constitutionality of the offenses of which he was not charged).

¶ 17   To answer the question presented, we must take the same two-part approach taken in *Chairez*. *Id.* ¶ 21. First, we conduct a textual and historical analysis of the second amendment "to determine whether the challenged law imposes a burden on conduct that was understood to be within the scope of the second amendment's protection at the time of ratification." *Mosley*, 2015 IL 115872, ¶ 34. If the conduct falls outside of the scope of the second amendment, then the regulated activity "is not categorically unprotected," and the law is not subject to further second

8

amendment review. *Id.* But if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected, then we apply the appropriate level of heightened means-ends scrutiny and consider the strength of the government's justification for restricting or regulating the exercise of second amendment rights. *Id.*

¶ 18    The second amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. Through the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV), this right is "fully applicable to the States." *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).

¶ 19    Our supreme court in *Chairez* noted that in *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), the United States Supreme Court determined that there is a guaranteed "individual right to possess and carry weapons in case of confrontation," based on the second amendment. The court in *Chairez* stated that while *Heller* instructs that even though the second amendment guarantees an individual right to bear arms, that right is " 'not unlimited.' " *Chairez*, 2018 IL 121417, ¶ 24 (quoting Heller, 554 U.S. at 626). The Supreme Court explained, in *dicta*, that its holding should not "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Heller*, 554 U.S. at 626.

¶ 20    In *Moore*, the Seventh Circuit ruled that the offenses proscribed under sections 24-1(a)(4) and 24-1(a)(10) (720 ILCS 5/24-1(a)(4), (10) (West 2012)) of the UUW statute, as well as the Class 4 form of section 24-1.6(a)(1), (a)(3)(A), (d) (*id.* § 24-1.6(a)(1), (a)(3)(A), (d)) of the AUUW statute, were unconstitutional since they prohibited carrying ready-to-use firearms outside of a person's home. *Moore*, 702 F.3d at 942. The *Moore* court noted, however, that

"when a state bans guns merely in particular places, such as public schools, a person can preserve an undiminished right of self-defense by not entering those places; since that's a lesser burden, the state [does not] need to prove so strong a need." *Id.* at 940.

¶ 21     Adopting this same reasoning, our supreme court in *Aguilar* recognized that "the second amendment protects the right to possess and use a firearm for self-defense outside the home," and therefore, the offense set forth in section 24-1.6(a)1, (a)(3)(A) of the AUUW statute, which prohibited carrying on one's person or in any vehicle, outside the home, an uncased, loaded, and immediately accessible firearm, to be unconstitutional on its face. *Aguilar*, 2013 IL 112116, ¶¶ 21-22. Two years later, in *Mosley*, 2015 IL 115872, ¶ 25, our supreme court extended *Aguilar*'s finding of facial unconstitutionality to another portion of the AUUW statute, section 24-1.6(a)(2), (a)(3)(A), which prohibited carrying an uncased, loaded, and immediately accessible firearm on a public way.

¶ 22     Most recently in *Chairez*, the question was whether the offense of possessing a firearm within 1000 feet of a public park, as set forth under section 24-1(a)(4), (c)(1.5) of the UUW statute, impermissibly encroached on the conduct at the core of the second amendment. *Chairez*, 2018 IL 121417, ¶ 26. The State argued that the conduct of possessing a firearm within 1000 feet of a public park was unprotected by the second amendment because the prohibition fell within *Heller*'s declaration that " 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings' " do not violate the second amendment rights of those prosecuted under such laws. *Id.* ¶ 27 (quoting *Heller*, 554 U.S. at 626). Our supreme court noted that beyond *Heller*'s two examples of "sensitive places"—schools and government buildings— "the Supreme Court has not yet provided a list of additional sensitive places that fall outside the second amendment protection or given any guidance on the breadth of its statement." *Id.* ¶ 29.

The court noted that "[a]mong the few cases that have specifically addressed *Heller*'s statement, we are unable to find a federal circuit case that has addressed a 1000-foot firearm restriction around a public park." *Id.*

¶ 23    In the case at bar, the State contends, relying on *United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011), that a public park should be considered a sensitive place, and thus the analysis should stop here. In *Masciandaro*, the park at issue was a national park, and the court specifically found that it "need not *** resolve the ambiguity in the 'sensitive places' language in this case, because even if [the National Park] is not a sensitive place *** [the statute at issue] still passes constitutional muster under the intermediate scrutiny standard." *Id.* at 473. The court specifically refrained from finding that a national park was a sensitive place. Judge Wilkinson, writing separately, expressed concern in *Masciandaro* that

> "[i]t is not clear in what places public authorities may ban firearms altogether without
>
> shouldering the burdens of litigation. The notion that 'self-defense has to take place
>
> wherever [a] person happens to be' [citation], appears to use to portend all sorts of
>
> litigation over schools, airports, parks, public thoroughfares, and various additional
>
> government facilities. *** The whole matter strikes us as a vast *terra incognita* that
>
> courts should enter only upon necessity and only then by small degree." *Id.* at 475
>
> (Wilkinson, J., specially concurring, joined by Duffy, J.)

It appears from this language that public parks may be considered sensitive places. We find this argument compelling, especially in light of the fact that public parks are notoriously "where large numbers of people, including children, congregate for recreation," and that "[s]uch circumstances justify reasonable measures to secure public safety." *Id.* at 473 (majority opinion).

¶ 24    Compelling argument aside, we are reminded that if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected, then we apply the appropriate level of heightened means-ends scrutiny and consider the strength of the government's justification for restricting or regulating the exercise of second amendment rights. *Mosley*, 2015 IL 115872, ¶ 34. The State has not provided us with any conclusive evidence or authority stating that a public park is a sensitive place, and thus we must, as was done by our supreme court and several other federal courts, move to the second part of the two-part analysis. *Chairez*, 2018 IL 121417, ¶ 30 (stating the court need not address whether the 1000-feet from a public park firearm restriction fell outside the ambit of the second amendment because "we agree with the approach taken by other courts that assume some level of scrutiny must apply to *Heller*'s 'presumptively lawful' regulations"); *Woollard v. Gallagher*, 712 F.3d 865, 875 (4th Cir. 2013) (stating that the court was not "obliged to impart a definitive ruling at the first step" but, rather, "deemed it prudent to instead resolve post-*Heller* challenges to firearm prohibitions at the second step"); *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 204 (5th Cir. 2012) ("Although we are inclined to uphold the challenged federal laws at step one of our analytical framework, in an abundance of caution, we proceed to step two."); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) (explaining that courts should apply some level of scrutiny even to regulations identified in *Heller* as presumptively lawful).

¶ 25    Our supreme court found that some level of scrutiny must apply at the second step, and noted that courts generally recognized that *Heller*'s reference to any standard of scrutiny means any heightened level of scrutiny, not rational-basis scrutiny. *Chairez*, 2018 IL 121417, ¶ 32. Under this approach, the *Chairez* court noted that "the second step of the inquiry requires the

court to examine the strength of the government's justifications for restricting certain firearm activity by evaluating the restriction the government has chosen to enact and the public-benefits ends it seeks to achieve." *Id.* ¶ 35. The court noted that in *Moore*, the Seventh Circuit stated that "[a] blanket prohibition on carrying gun[s] in public prevents a person from defending himself anywhere except inside his home; and so substantial a curtailment of the right of armed self-defense requires a greater showing of justification than merely that the public *might* benefit on balance from such a curtailment, thought there is no proof it would." (Emphasis in original.) *Moore*, 702 F.3d at 940. While conversely, "when a state bans guns merely in particular places, such as public schools, a person can preserve an undiminished right of self-defense by not entering those places; since that's a lesser burden, the state [does not] need to prove so strong a need." *Id.*

¶ 26     Our supreme court noted in *Chairez* that the closer in proximity the restricted activity was to the core of the second amendment right and the more people affected by the restriction, the more rigorous the means-end review. *Chairez*, 2018 IL 121417, ¶ 45. The court noted that if the State could not proffer evidence establishing both the law's strong public-interest justification and its close fit to this end, the law must be held to be unconstitutional. *Id.* Applying this framework, the court found that elevated intermediate scrutiny should apply, and that under this more rigorous review, the government bears the burden of showing a very strong public-interest justification and a close fit between the government's means and its end, as well as proving that the public's interests are strong enough to justify the substantial and encumbrance on individual second amendment rights. *Id.* ¶ 50. In other words, the State had to establish a close fit between the 1000-foot firearm restriction around a public park and the actual public interests it serves. *Id.*

¶ 27    Our supreme court found that the State provided no evidentiary support for its claim that prohibiting firearms within 1000 feet of a public park would reduce the risks it identified. *Id.* ¶ 54. "Without specific data or other meaningful evidence, we see no direct correlation between the information the State provides and its assertion that a 1000-foot firearm ban around a public park protects children, as well as other vulnerable persons, from firearm violence." *Id.* The court stated:

> "Aside from the sheer number of locations and public areas that would qualify
> under the law, not only in the City of Chicago, but throughout Illinois, the most
> troubling aspect is the lack of any notification where the 1000-foot restriction
> zone starts and where it would end. Innocent behavior could swiftly be
> transformed into culpable conduct if an individual unknowingly crosses into a
> firearm restriction zone. The result could create a chilling effect on the second
> amendment when an otherwise law-abiding individual may inadvertently violate
> the 1000-foot firearm-restricted zones by just turning a street corner. Likewise, in
> response to a question at oral argument, the State conceded that an individual who
> lives within 1000 feet of a public park would violate section 24-1(a)(4), (c)(1.5)
> every time that individual possessed a firearm for self-defense and walked to his
> or her vehicle parked on a public street. To remain in compliance with the law,
> the State said that the individual would need to disassemble his or her firearm and
> place it in a case before entering the restricted zone. This requirement, however,
> renders the ability to defend oneself inoperable and is in direct contradiction to
> this court's decisions in *Aguilar*, which recognized that the right to carry firearms

for self-defense may be especially important when traveling outside of the home, and perhaps even more important than while at home." *Id.* ¶ 55.

¶ 28    Our supreme court in *Chairez* found that the State had not established the required means-end fit between the challenged law and its justifications, and that therefore possessing a firearm within 1000 feet of a public park in violation of the UUW statute was facially unconstitutional. *Id.* ¶ 56. Having found the charged offense under section 24-1(a)(4), (c)(1.5) of the UUW statute unconstitutional, the *Chairez* court then considered whether the invalid provision in the statute was severable from the remaining provisions absent the invalid one. *Id.* ¶ 58. The court found that removing this single location offense did not undermine the completeness of the remaining locations in section 24-1(c)(1.5), and that the remaining specific locations were capable of being enforced without the offense of possessing a firearm within 1000 feet of a public park. *Id.* ¶ 62.

¶ 29    We now turn to whether the possession of a firearm in a public park provision of the UUW statute is facially unconstitutional by examining the strength of the government's justifications for restricting certain firearm activity by evaluating the restriction the government has chosen to enact and the public-benefits ends it seeks to achieve. *Id.* ¶ 35. We reiterate, as stated in both *Chairez* and *Moore*, that a blanket prohibition on carrying guns in public prevents a person from defending himself anywhere except inside his home, and such a substantial curtailment of the right of armed self-defense requires a greater showing of justification than merely that the public might benefit on balance from such a curtailment. *Moore*, 702 F.3d at 940; *Chairez*, 2018 IL 121417, ¶ 43. Conversely, "when a state bans guns merely in particular places, such as public schools, a person can preserve an undiminished right of self-defense by not entering those places; since that's a lesser burden, the state [does not] need to prove so strong a

15

need." *Moore*, 702 F.3d at 940. We find that public parks are areas "where large numbers of people, including children, congregate for recreation," and that "[s]uch circumstances justify reasonable measures to secure public safety." *Masciandaro*, 638 F.3d at 473.

¶ 30 While the *Chairez* court ultimately found that the "most troubling aspect" of the 1000-feet from a public park provision was "the lack of any notification where the 1000-foot restriction zone starts and where it would end," no such issues exist in the portion of the statute at issue here. The *Chairez* court noted that "[i]nnocent behavior could swiftly be transformed into culpable conduct if an individual unknowingly crosses into a firearm restriction zone. The result could create a chilling effect on the second amendment when an otherwise law-abiding individual may inadvertently violate the 1000-foot firearm-restricted zones by just turning a street corner." *Chairez*, 2018 IL 121417, ¶ 55. These "troubling aspects" are not present here, and a person can certainly preserve an undiminished right of self-defense by simply not entering a public park. Accordingly, while the evidence that the State points to largely concerns public schools, we nevertheless find, as noted in *Chairez*, that the purpose of the UUW statute "is to protect the police and public from dangerous weapons." *Id.* ¶ 62. We find that the firearm restriction's "within a public park" provision continues to accomplish this aim without "effectively prohibit[ing] the possession of a firearm for self-defense within a vast majority of the acreage in the city of Chicago." *Id.* ¶ 55.

¶ 31 We reiterate that all statutes carry a strong presumption of constitutionality, and that we will find a statute constitutional if it can be reasonably done. *Aguilar*, 2013 IL 112116, ¶ 15. We find that it can reasonably be done in this case, and decline to find section 24-1(a)(10), (c)(1.5) of the UUW statute facially unconstitutional.

16

¶ 32   Defendant's final argument, which the State concedes, is that the mittimus should be corrected to reflect the trial court's oral pronouncement that defendant was to be sentenced to two years' imprisonment on the Class 3 UUW conviction, and that his remaining convictions for AUUW merged into that count.

¶ 33                                    CONCLUSION

¶ 34   For the foregoing reasons, we affirm the judgment of the circuit court of Cook County and order the mittimus to be corrected in accordance with this order.

¶ 35   Affirmed; mittimus corrected.

¶ 36   PRESIDING JUSTICE HOFFMAN, specially concurring:

¶ 38   I concur in the result reached by the majority and write separately to explain my reasons for doing so.

¶ 39   As the majority notes, the Supreme Court in *Heller* held that, although it found that an individual's right to possess and carry weapons is constitutionally guaranteed, that right is not unlimited. The *Heller* court explained that its holding that an individual's right to possess and carry weapons is constitutionally guaranteed should not "cast doubt on *** laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

¶ 40   In this appeal, we are considering the constitutionality of a statute that forbids the carrying of a weapon in a public park. As the majority states, public parks are places "where large numbers of people, including children, congregate for recreation" (see *United States v. Masciandaro*, 638 F.3d 458, 473 (4th Cir. 2011)). The State argues, and I agree, that a public park is a sensitive place akin to a school and, as a consequence, the inquiry as to the constitutionality of the statute ends. In contrast, the majority concludes that, as the State has not

17

provided conclusive evidence or authority that a public park is a sensitive place, it was required to examine the strength of the State's justification for restricting the possession of a weapon in a public park by evaluating the restriction and the public-benefit ends it seeks to achieve.

¶ 41    I believe a public park's status as a sensitive place is evident and requires no further evidence or authority of its status as such. The State's justification for prohibiting the possession of a firearm in a public park is manifest in light of the public benefit the prohibition seeks to achieve. Therefore, I am of the opinion that section 24-1(a)(10), (c)(1.5) of the Code, which prohibits carrying or possessing a firearm in a public park, is constitutional without further analysis.